[Cite as *Rubino Constr., Inc. v. Dept. of Job & Family Servs.*, 2018-Ohio-5099.]
### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rubino Construction, Inc., | : | |
| Appellant-Appellant, | : | No. 17AP-662 |
| | | (C.P.C. No. 16CV-8225) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Director, Ohio Department of Job and Family Services, | : | |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

---

### D E C I S I O N

### Rendered on December 18, 2018

---

**On brief**: *Harrington, Hoppe & Mitchell, Ltd.*, and *Matthew M. Ries*, for appellant.

**On brief**: *Michael DeWine*, Attorney General, and *Susan M. Sheffield*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, P.J.

{¶ 1} Rubino Construction, Inc. ("Rubino"), appellant, has filed an appeal from the judgment of the Franklin County Court of Common Pleas, in which the court affirmed the order of the Ohio Department of Job and Family Services ("ODJFS"), appellee.

{¶ 2} Rubino is a construction company owned by Dominic Marchionda. In 2015, Rubino was hired by Wick Properties, LLC ("Wick"), as a general contractor for a renovation project on the Wick building in Youngstown, Ohio. Wick is partially owned by Marchionda. NYO Property Group, LLC ("NYO") is a property management company also owned by Marchionda that was to manage the property once the renovations were complete. Rubino hired GreenHeart Companies, LLC ("GreenHeart"), to coordinate the

renovation and demolition. Rubino also hired Carmen Silvestri to complete the demolition. Rubino contends it hired Silvestri as an independent contractor. Silvestri then hired Alejandro Salinas ("claimant"). Rubino contends claimant was also hired as an independent contractor. Claimant was a professional boxer, and between training and fights, he worked intermittently over the course of several months. Rubino directly issued claimant his wage payments.

{¶ 3} After the demolition work was completed, claimant filed for unemployment compensation on January 20, 2016. On February 10, 2016, the Ohio Department of Taxation rendered a Determination of Employer's Liability and Contribution Rate Determination, finding Rubino was a liable "employer" under R.C. 4141.01 for purposes of Ohio unemployment taxes and assigning an employer contribution rate. Rubino appealed the determination.

{¶ 4} On June 22, 2016, a hearing officer held a hearing over the telephone. Marchionda and Silvestri testified. On August 3, 2016, the Unemployment Compensation Review Commission ("UCRC"), which operates under ODJFS, rendered a final decision, finding claimant was an employee of Rubino. The effect of this determination was to require Rubino to maintain an unemployment compensation account with ODJFS and pay unemployment compensation taxes. Rubino appealed the decision to the Franklin County Court of Common Pleas. On August 22, 2017, the common pleas court issued a decision and entry affirming UCRC's decision. Rubino appeals the judgment of the common pleas court, asserting the following assignment of error:

> THE TRIAL COURT ERRED IN AFFIRMING THE ADMINISTRATIVE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION, FINDING RUBINO CONSTRUCTION WAS AN EMPLOYER PURSUANT TO R.C. § 4141.01.

{¶ 5} In its sole assignment of error, Rubino argues the common pleas court erred when it affirmed the decision of UCRC. R.C. 4141.26(D)(2) explains the common pleas court, when reviewing a decision of UCRC:

> [M]ay affirm the determination or order complained of in the appeal if it finds, upon consideration of the entire record, that the determination or order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the

determination or order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 6} "Our standard of review is narrower than the trial court's. As to factual issues, our review is limited to a determination as to whether the trial court abused its discretion." *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18 (citing numerous cases). "An abuse of discretion requires more than an error in judgment. [In this context], [t]o find an abuse of discretion, we must conclude that the trial court's decision is without a reasonable basis and clearly wrong." *Id.* "Absent an abuse of discretion on the part of the common pleas court, this court is obligated to affirm its judgment." *Stouffer Hotel Mgt. Corp. v. Ohio Unemp. Comp. Bd. of Review*, 87 Ohio App.3d 179, 183 (10th Dist.1993). However, this court's review of questions of law is plenary. *BRT Transp. LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 15.

{¶ 7} Ohio employers must pay contributions into Ohio's unemployment compensation fund. R.C. 4141.23(A). The definition of "employer" includes the type of organization that has "in employment at least one individual." R.C. 4141.01(A)(1)(a). "Employment" means:

[S]ervice performed by an individual for remuneration under any contract of hire, written or oral, express or implied * * *, unless it is shown to the satisfaction of the director that such individual has been and will continue to be free from direction or control over the performance of such service, both under a contract of service and in fact.

{¶ 8} R.C. 4141.01(B)(1). The burden of proving entitlement to the independent contractor exemption is on the employer. *Peter D. Hart Research Assocs., Inc. v. Admr. Ohio Bur. of Emp. Servs.*, 10th Dist. No. 95APE06-736 (Dec. 28, 1995), citing *McConnell v. Admr. Ohio Bur. of Emp. Servs.*, 10th Dist. No. 95APE03-262 (Oct. 5, 1995).

{¶ 9} R.C. 4141.01(B)(2)(k) provides:

Construction services performed by any individual under a construction contract, as defined in section 4141.39 of the Revised Code, if the director determines that the employer for whom services are performed has the right to direct or control the performance of the services and that the individuals who perform the services receive remuneration for the services

performed. The director shall presume that the employer for whom services are performed has the right to direct or control the performance of the services if ten or more of the following criteria apply:

(i) The employer directs or controls the manner or method by which instructions are given to the individual performing services;

(ii) The employer requires particular training for the individual performing services;

(iii) Services performed by the individual are integrated into the regular functioning of the employer;

(iv) The employer requires that services be provided by a particular individual;

(v) The employer hires, supervises, or pays the wages of the individual performing services;

(vi) A continuing relationship between the employer and the individual performing services exists which contemplates continuing or recurring work, even if not full-time work;

(vii) The employer requires the individual to perform services during established hours;

(viii) The employer requires that the individual performing services be devoted on a full-time basis to the business of the employer;

(ix) The employer requires the individual to perform services on the employer's premises;

(x) The employer requires the individual performing services to follow the order of work established by the employer;

(xi) The employer requires the individual performing services to make oral or written reports of progress;

(xii) The employer makes payment to the individual for services on a regular basis, such as hourly, weekly, or monthly;

(xiii) The employer pays expenses for the individual performing services;

(xiv) The employer furnishes the tools and materials for use by the individual to perform services;

(xv) The individual performing services has not invested in the facilities used to perform services;

(xvi) The individual performing services does not realize a profit or suffer a loss as a result of the performance of the services;

(xvii) The individual performing services is not performing services for more than two employers simultaneously;

(xviii) The individual performing services does not make the services available to the general public;

(xix) The employer has a right to discharge the individual performing services;

(xx) The individual performing services has the right to end the individual's relationship with the employer without incurring liability pursuant to an employment contract or agreement.

{¶ 10} Here, the common pleas court affirmed UCRC's determination and found claimant met 11 of the 20 factors of an "employee" under R.C. 4141.01(B)(2)(k), those being (i), (iii), (v), (vii), (ix), (xii), (xiv), (xv), (xvi), (xviii), and (xix). Appellant argues in the present appeal the evidence does not support a determination that Rubino was the employer of claimant because a majority of R.C. 4141.01(B)(2)(k) factors weigh in Rubino's favor. We will address Rubino's claim with regard to each factor cited by the common pleas court.

{¶ 11} Initially, however, because UCRC did not set forth its findings and reasons under specific factors, we will summarize UCRC's factual findings behind its conclusion that claimant was an employee of Rubino. The UCRC found that Rubino had sufficient control over the demolition crew to create an employer-employee relationship. Silvestri began working for Rubino after he asked Marchionda if there was any work he could do for him. Silvestri then hired claimant and the rest of the demolition crew. The demolition crew was paid by the hour, their hours were tracked by Silvestri, they worked varying hours, their hours were reported to the agents of Rubino by Silvestri, they worked on a

worksite on which Rubino was the general contractor, and they were paid directly by Rubino via company paychecks. The UCRC also found Rubino hired GreenHeart as the construction manager, GreenHeart became Rubino's agent, and GreenHeart directed the demolition crew as to the time and place to perform their work. Rubino also provided tools to the demolition crew, including dumpsters to haul away the demolition debris.

{¶ 12} With regard to the first factor in R.C. 4141.01(B)(2)(k)(i)—the employer directs or controls the manner or method by which instructions are given to the individual performing services—the common pleas court found that, through its agent GreenHeart, Rubino directed or controlled the manner by which instructions were given to the demolition crew. In its appeal, Rubino argues there was no evidence to support such because Silvestri testified the demolition crew received instructions from GreenHeart regarding the manner of their work but Rubino did not give directions or oversee any of the work performed by the demolition subcontractor. Rubino argues if this court were to rely on the fact that GreenHeart was hired by Rubino to demonstrate that Rubino controlled the activities of the subcontractors, it could arguably result in all workers on a construction site being deemed an employee of the general contractor.

{¶ 13} As relevant to this factor, Silvestri testified at the hearing that he was an independent demolition contractor. He said he does not have a business but works "independently." He does not offer his services to other companies, does not advertise his services, does not have a business name, and does not carry workers' compensation. He said that GreenHeart told him what to demolish. Marchionda originally told him to meet with GreenHeart at the Wick building to discuss the demolition and what work had to be completed. He said he told claimant what to do, and Rubino did not require any training of claimant and had no control over when claimant left the jobsite. Silvestri stated that claimant dictated his own schedule, and there was no minimum number of hours that claimant had to work.

{¶ 14} Marchionda testified at the hearing that he owned Rubino. Wick Properties owns the Wick building, and NYO is a property management company. He is a 50 percent owner of Wick Properties and has an ownership interest in NYO. Marchionda said he hired GreenHeart as the construction management company in charge of coordinating subcontractors for the project and setting the schedule for the demolition work. He stated GreenHeart is a completely separate company than Rubino. He testified that Silvestri

approached him and asked him if there was any work he could do. Silvestri put together a "group of individuals," who then performed the demolition. Marchionda, however, testified he did not know the details of how claimant was hired to work on the demolition crew. He stated that Rubino had no disciplinary or scheduling authority over claimant, did not require claimant to work a minimum number of hours, and did not require status reports on claimant's work.

{¶ 15} An important issue underlying this factor, as well as several other factors, is whether others acted as Rubino's agents, so as to impute their actions and control to Rubino. We agree with UCRC and the common pleas court that GreenHeart, as well as Silvestri, acted as agents for Rubino in directing and controlling the actions of claimant. Rubino was the general contractor and, although Rubino hired GreenHeart as the management company, Rubino had the ultimate control over the entire project as the general contractor. Although Rubino argues it is not in the demolition business, as the general contractor, it was ultimately responsible for the demolition and how GreenHeart and Silvestri completed their jobs. Furthermore, although Silvestri claimed to be acting as an independent contractor, he was hired by Marchionda and had little resemblance to a truly independent business. He acted more like an extension of Rubino and a supervisor that Marchionda put in charge of hiring additional employees to complete the demolition work. Given this analysis, we agree that, through GreenHeart and Silvestri, Rubino directed and controlled the manner and method by which instructions were given to claimant based on the above testimony. Therefore, we can find no abuse of discretion in the common pleas court's finding on this issue, and find factor (i) weighs in favor of claimant.

{¶ 16} With regard to factor (iii)—services performed by the individual are integrated into the regular functioning of the employer—the common pleas court found the services provided by claimant were integral to Rubino's work and, as the general contractor, the relationship between Rubino, Wick, and NYO was intertwined for purposes of demolition. In its appeal, Rubino argues it is a general contractor in the construction industry and does not provide demolition services, which is why it outsourced the demolition work to a demolition subcontractor.

{¶ 17} We have already discussed above the interrelationship between Marchionda and Rubino and the other companies Marchionda owns. We have also addressed how

GreenHeart and Silvestri acted as agents for Rubino in controlling claimant's work. Although Rubino argues it is a general contractor and not involved in demolition, hiring managers and employees to complete demolition is a general contractor's responsibility. Therefore, we find the common pleas court did not err when it found the services performed by claimant were integrated into the regular functioning of Rubino, and this factor weighs in favor of claimant.

{¶ 18} With regard to factor (v)—the employer hires, supervises, or pays the wages of the individual performing services—the common pleas court found that, regardless of Rubino's rationale for doing so, Rubino paid claimant's wages directly, and the wages were based on an hourly rate tracked by Silvestri. In his appeal, Rubino argues that Silvestri testified he hired claimant, and Marchionda testified he had no disciplinary authority over claimant. Rubino also argues that, although it did pay claimant directly, it did so only because, in the past, subcontractors had failed to pay their employees and those employees threatened to sue Rubino, as the general contractor. However, Rubino concedes that, given our standard of review to defer to the trial court's weighing of conflicting evidence, this factor must weigh in favor of claimant. We agree.

{¶ 19} Silvestri testified he was an independent demolition contractor. He stated he does not have a business, does not offer his services to other companies, does not advertise his services, does not have a business name, and does not carry workers' compensation. Rubino did not hire claimant; rather, Silvestri did. He stated Marchionda paid him and claimant through company checks issued by Rubino. Silvestri told claimant what to do and kept track of how many hours claimant worked. At the end of the week, Silvestri submitted the hours worked to NYO. He stated claimant got paid every two weeks.

{¶ 20} Marchionda testified he did not know how claimant came to be hired to work demolition at the Wick building. Rubino paid claimant, in addition to all plumbers, electricians, and drywallers. He stated that, based on a prior incident when he was threatened by a worker who was not paid by one of the subcontractors he had hired, he began to pay workers directly. Based on the same reasoning as the common pleas court, we find the court did not err in its finding and this factor weighs in favor of claimant.

{¶ 21} With regard to factor (vii)—the employer requires the individual to perform services during established hours—the common pleas court found that claimant was

required to work certain hours and could only perform his job when the jobsite was made available to him during the same working hours as other crews, was supervised by Silvestri and GreenHeart, and was not permitted to perform his job on weekends or off hours. In its appeal, Rubino argues it never set any hours for claimant or required him to work any particular hours, pointing to Silvestri's testimony that claimant dictated his own schedule, Rubino did not have any control over when claimant left work, and there were no required hours that claimant had to work. Rubino also counters the mere fact that claimant did not work weekends or off hours does not mean that Rubino controlled claimant's hours. Rubino contends the fact that claimant had to work during established hours is true of all subcontractors, and Rubino was not the property owner, did not dictate access, and did not establish the hours of demolition.

{¶ 22} As pertinent to this factor, Silvestri testified claimant worked sporadically. claimant worked no set hours and could come and go from the jobsite at his discretion. He stated Rubino had no control over when claimant left the jobsite, and claimant left many times in the middle of the day. There was no minimum number of hours that claimant had to work, and claimant was allowed to end his work at any time. Claimant dictated his own work schedule. Silvestri testified that claimant could not work off hours or on the weekend and had no independent access to the building to work.

{¶ 23} Marchionda testified GreenHeart set the schedule for the demolition work at the Wick building. Rubino had no scheduling authority over claimant and did not require him to work a minimum number of hours.

{¶ 24} Clearly, although claimant could control which days he worked, he could only perform his job when the worksite was open and generally followed the same workday hours as other workers. Claimant could not work weekend hours and could not access the worksite during off hours. Rubino, through its agents GreenHeart and Silvestri, controlled the standard work hours for claimant. Although Rubino presents contrary arguments as to why these findings should not be relevant, they fit within the definition of the factor, and we cannot say the common pleas court erred in finding this weighed in favor of claimant.

{¶ 25} With regard to factor (ix)—the employer requires the individual to perform services on the employer's premises—the common pleas court found that claimant's work had to be performed at the Wick building, which was a jobsite operated and controlled by

Rubino. The court also found that Marchionda's tri-ownership interests justified the UCRC's determination that claimant's work was performed on Rubino's premises. In its appeal, Rubino argues it never required claimant to perform work on its premises, given all the work was performed at the Wick building, which was owned by Wick.

{¶ 26} As relevant to this factor, Silvestri and Marchionda testified that claimant did not do any work on Rubino's premises. All work was performed at the Wick building. However, as related to the common pleas court's reasoning, Marchionda testified that Wick owns the Wick building, and he is 50 percent owner of Wick. Thus, consistent with the common pleas court's analysis, based on Marchionda's ownership interests common to Rubino and Wick, we can find no error in the common pleas court's conclusion that Rubino required claimant to perform his demolition on Rubino's premises. Thus, this factor weighs in favor of claimant.

{¶ 27} With regard to factor (xii)—the employer makes payment to the individual for services on a regular basis, such as hourly, weekly, or monthly—in its appeal, Rubino concedes this factor weighs in favor of claimant, but it notes that Rubino paid claimant directly only because it had been threatened in the past with legal action by subcontractors' employees when those subcontractors failed to pay the employees.

{¶ 28} As relevant to this factor, Silvestri testified that claimant was paid hourly, he would submit the hours claimant worked to NYO at the end of every week, and Rubino would pay claimant. Marchionda similarly testified that Rubino paid claimant, but claimed he did so directly only because of a prior incident in which he was threatened by a worker who was not paid by one of the contractors he had hired. However, regardless of Rubino's claimed reason for paying claimant, the evidence clearly established that Rubino paid claimant for his services on a regular, hourly basis, which weighs in favor of Rubino being claimant's employer.

{¶ 29} With regard to factor (xiv)—the employer furnishes the tools and materials for use by the individual to perform services—the common pleas court found that, although claimant provided some of his own tools, Rubino provided some essential tools and items, such as dumpsters, necessary for claimant to perform his demolition work. In its appeal, Rubino argues that both Marchionda and Silvestri testified Rubino provided claimant with no tools, equipment, or materials for use at work. Rubino points to Silvestri's testimony that claimant provided his own tools or shared tools owned by other

contractors. Rubino also asserts that, despite the common pleas court's finding, the dumpsters were owned and provided by a third-party refuse company.

{¶ 30} As relevant to this factor, Silvestri testified that he and claimant either use their own equipment or borrowed equipment from other subcontractors. Marchionda also stated that Rubino did not supply tools or equipment to claimant. However, Silvestri testified that he and claimant would dump construction debris into dumpsters for which Rubino paid. It is unclear from Rubino's argument whether it is actually refuting that it paid for the dumpsters. Regardless, Silvestri's testimony provided evidence to support the finding by the common pleas court that Rubino provided at least the dumpsters for the demolition. Thus, we find no error in the finding that this factor favored claimant.

{¶ 31} With regard to factor (xv)—the individual performing services has not invested in the facilities used to perform services—the common pleas court found that claimant was not invested in the facilities, as those instrumentalities were provided by either Silvestri or Rubino. In its appeal, Rubino concedes this factor likely weighs in favor of claimant, to the extent claimant used other subcontractor's tools that were not his own. We agree, based on the same reasoning and testimony already discussed above.

{¶ 32} With regard to factor (xvi)—the individual performing services does not realize a profit or suffer a loss as a result of the performance of the services—the common pleas court found that claimant did not realize any profit or suffer any loss because he was paid on an hourly basis. In its appeal, Rubino concedes this factor weighs in favor of claimant, based on the applicable standard of review. We agree. The testimony demonstrated claimant was paid hourly and did not have any potential to earn a profit or suffer a loss based on his performance.

{¶ 33} With regard to factor (xviii)—the individual performing services does not make the services available to the general public—the common pleas court found there was no evidence claimant made demolition services available to the general public, and the burden of proving entitlement to the independent contractor exemption was on Rubino. In its appeal, Rubino argues that neither party presented any evidence on this factor, yet the court found it weighed in favor of claimant. Although we agree there was no direct testimony as to whether claimant made the services available to the general public, Silvestri testified that claimant was a professional boxer and only worked sporadically between training and fights. Silvestri stated claimant did very little on the

jobsite, and he only gave him a job because claimant's manager said claimant needed some money. Although there was no direct testimony, Silvestri's testimony suggested that claimant did not offer his demolition services to the general public. We find no error.

{¶ 34} With regard to factor (xix)—the employer has a right to discharge the individual performing services—the common pleas court found that Rubino had the right to terminate claimant, as acknowledged by Rubino. In its appeal, Rubino concedes that it had the right to terminate its independent contractor agreement with claimant once the demolition work was completed and, in fact, did so. However, Rubino contends termination clauses are common with independent contractors and, thus, its relevance is dubious, but, nevertheless, concedes that this factor weighs in favor of claimant. We agree this factor weighs in favor of claimant. Silvestri told claimant that once the job was completed, his employment would be terminated. Marchionda testified that Rubino had no written employment agreement with claimant and could terminate him at any time.

{¶ 35} Given our above determinations, we confirm the findings of the common pleas court that claimant met at least 11 of the 20 factors of an "employee" under R.C. 4141.01(B)(2)(k). Thus, UCRC was required to presume that Rubino had the right to control claimant's performance of services and was Rubino's employee. Therefore, we find the common pleas court did not abuse its discretion when it found UCRC's decision was supported by reliable, probative, and substantial evidence, and we overrule Rubino's assignment of error.

{¶ 36} Accordingly, we overrule Rubino's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.

———————————